UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA on behalf of and for the use and benefit of RIVERSIDE MARINE CONSTRUCTION, INC. D/B/A RIVERSIDE & PICKERING MARINE CONTRACTORS,<br><br>Plaintiff,<br>v.<br><br>LUCIANOS EXCAVATION, INC., and FRANKENMUTH INSURANCE COMPANY,<br><br>Defendants. | Civil Action No. _____<br><br>COMPLAINT AND JURY DEMAND |

Pursuant to the Miller Act, 40 U.S.C. § 3131, *et seq*., Plaintiff, Riverside Marine Construction, Inc., d/b/a Riverside & Pickering Marine Contractors ("Riverside"), in the name of the United States, seeks to recover amounts owed under its subcontract with Defendant, Lucianos Excavation, Inc., ("Lucianos"), and under the Payment Bond issued by its surety, Defendant Frankenmuth Insurance Company ("Frankenmuth"), on the federally owned construction project located at Hampton Harbor North Jetty, North Hampton, New Hampshire.

**PARTIES**

1. Pursuant to 40 U.S.C. § 3133(b)(3), this action is brought in the name of the United States on behalf of Plaintiff, Riverside, a New Hampshire domestic profit corporation with a usual place of business located at 34 Patterson Lane, Newington, NH, 03801.

2. Defendant Lucianos is a corporation organized and existing pursuant to the laws of the State of Massachusetts with a principal place of business located at 41 Taunton Green, Suite 102, Taunton, MA 02780.

3. Defendant Frankenmuth is a corporation organized and existing pursuant to the laws of the State of Michigan with a principal place of business located at One Mutual Ave., Frankenmuth, MI 48787. Frankenmuth is a surety for Lucianos under Payment Bond No. SUR0001196 executed on July 10, 2023, in accordance with 40 U.S.C. § 3131-3134 (the "Bond").

## JURISDICTION AND VENUE

4. The Subcontract at issue concerned the repair of the Hampton Harbor North Jetty located at the North Hampton, New Hampshire, which is owned and controlled by the U.S. government, and was performed for the Department of the U.S. Army Corp. of Engineers ("USACE"). Accordingly, jurisdiction is proper under 40 U.S.C. § 3133(b)(3).

5. The Court has pendant and supplemental jurisdiction over claims brought under state law pursuant to 28 U.S.C. § 1367.

6. Venue is proper under 28 U.S.C. § 1391(b) and (c), and 40 U.S.C. § 3133 (b)(3)(B) as the contract at issue was performed in this judicial district.

## FACTS

7. The United States, acting by and through the USACE, entered into a prime contract with Lucianos to repair the Hampton Harbor North Jetty, Project No. 096-NA-X-3123-0000 (the "Project"), pursuant to contract number W912WJ23C0008 (the "Prime Contract").

8. On information and belief, Frankenmuth, as surety, issued the Bond on behalf of its principal, Lucianos, in the penal sum of $7,220,000 to protect the interests of Riverside and other Subcontractors on the Project.

9. On or about October 27, 2023, Riverside subcontracted with Lucianos to provide certain marine work for the Project (the "Subcontract"), as set forth in Appendix C of the Subcontract.

10. Riverside's work was to be performed on a time and materials basis.

11. The Appendix C Statement of Work expressly provided that a "minimum" of 4 months of Riverside's services were "[g]uaranteed" and expressed this "minimum" in terms of "88 working days."

12. The Subcontract also vested Riverside with complete and exclusive authority and discretion to delay operations due to, among other things, the interests of safety, equipment failures, and adverse weather conditions.

13. At all times on the Project, Riverside actively involved Lucianos' management on all construction methods, safety and delay issues, and actively solicited Lucianos' input on any and all decisions to delay operations.

14. During the course of the Project, Lucianos never contested Riverside's decisions relative to the quality of Riverside's work, or Riverside's rates and invoices relative to such Work.

15. Riverside timely submitted its invoices to Lucianos on a weekly basis.

16. For unknown reasons, however, Lucianos failed to make timely payments to Riverside.

17. On or about January 30, 2024, Alex Riberio, Luciano Riberio and Robert Amendolara of Lucianos met with Kenneth Anderson of Riverside, and represented that Lucianos would become (and stay) current on invoices if Riverside provided certain discounts on the rock barge and crane operator. Alex Riberio of Lucianos further represented at this meeting

3

Lucianos was requesting such discounts because it needed Riverside's help as Lucianos was having great difficulty controlling its own project costs.

18. In reliance on these material representations, Riverside extended significant discounts for the rock barge through the end of the Project, in addition to crane operator discounts.

19. In addition, in reliance on these representations from Lucianos, Riverside elected, in good faith, not to exercise the 37 day late payment clause under the Subcontract, which Riverside could have exercised starting in late January of 2024 and which afforded Riverside the right to stop work on the Project.

20. Despite its representations, and the consideration given by Riverside, Lucianos failed to become current on invoicing.

21. By email dated April 30, 2024, Ken Anderson at Riverside indicated that it was entitled to stop the Subcontract work because its outstanding invoices were not paid as promised. In a response email later the same day, Alex Ribeiro at Lucianos represented that a check would be hand delivered to Riverside the following day paying all past due amounts.

22. On May 1, 2024, when Ken Anderson at Riverside pointed out that Lucianos latest check was short and asked if the plan to pay all past due amounts had changed, Alex Ribeiro at Lucianos again reiterated its commitment, stating that "nothing has changed" regarding its promise to fully pay all overdue invoices.

23. Lucianos made these express written and verbal representations of full payment in order to induce Riverside to forego its contractual right to stop work, and to ensure Riverside would finish the project.

24. Approximately two weeks later, on May 15, 2024, and once Riverside's work was complete, Lucianos issued a letter which (for the first time) threatened backcharges against Riverside. The letter also demanded that Riverside accept a *de minimus* sum in "settlement" of the amounts due and owing.

25. Despite multiple requests by Riverside, Lucianos never specifically identified any "backcharges" or presented any detailed, good faith reason for nonpayment.

26. To the extent not impeded, hindered, or prevented by Lucianos, Riverside completely, and diligently performed and completed its work on the Project in accordance with the Subcontract.

27. Riverside timely submitted all invoices, requisitions, and applications for payment to Lucianos in accordance with the Subcontract for the labor, materials, and equipment it furnished to the Project in the amount of $1,489,806.25.

28. Lucianos, however, despite due demand, has only paid Riverside the amount of $1,036,137.50, which has left an outstanding balance due and owing to Riverside in the amount of $453,668.75, plus interest and other entitlements.

29. At all times relevant hereto, Lucianos was fully aware that it owed Riverside compensation under the Subcontract.

30. Lucianos has provided false and pretextual reasons for nonpayment – reasons never raised during the course of the Project.

31. As one example, Lucianos' principal position is that the Subcontract purportedly limited Riverside to 88 working days. This is obviously incorrect and, given the plain and unambiguous language of the Subcontract, is offered in bad faith.

32. Further, based upon documents received in response to a FOIA request, Lucianos repeatedly inaccurately represented and certified to the USACE in its payment requisitions, signed under the pains and penalties of perjury, that it fully paid Riverside.

33. For example, Lucianos April 18, 2024 Prompt Payment Certification, signed by Rob Amendolara, Project Manager with Lucianos, represented that Lucianos had previously paid Riverside $2,140,000 for work performed on the Project, and that it was seeking additional payment of $200,000 for Riverside's work. In doing so, Lucianos not only represented that it had paid Riverside more than the $1,036,137.50 actually received, but further represented that Riverside had performed $2,340,000 in work on the Project—far above the $1,489,806.25 of work actually performed by Riverside.

34. Just over one month later, Lucianos' May 22, 2024 Prompt Payment Certification, signed by Rob Amendolara, Project Manager with Lucianos, represented that Lucianos had now only previously paid Riverside $1,467,737.30 for work performed on the Project (nearly $1M less than represented in April 2024), and that it was seeking additional payment of $89,043.00 for Riverside's work. Again, despite reducing the previously represented amount paid, Lucianos still misrepresented that it had paid Riverside more than the $1,036,137.50 actually received, and still misrepresented the total value of Riverside's work performed on the Project as $1,556,780.30.

35. These representations, as well as numerous others, in Lucianos' Prompt Payment Certifications were inaccurate.

36. In addition, based upon documents received in response to a FOIA request, including December 15, 2023 and May 22, 2024 letters from Lucianos to the USACE, Lucianos has submitted a seven-figure claim of over $1.36M to the federal government seeking relief in

connection with weather related delays while, at the same time, attempting to offset payment or backcharge Riverside.  In numerous instances, Lucianos has sought payment from the federal government relating to amounts that it is now attempting to dispute with Riverside.  Moreover, upon information and belief, Lucianos has, at times, sought payment from the federal government for full day rates, even when Riverside did not charge Lucianos the full rate.

37. More than 90 days have passed since Lucianos performed the last of its labor and/or furnished material to the Project.

38. The aforementioned Bond constitutes the only security awardable to Riverside for the labor, material, and equipment furnished and incorporated into the Project.

39. Riverside sent written notice of its claim upon the Bond to Frankenmuth for the $453,668.75 due and owing under the Subcontract ("Bond Claim").

40. To date, neither Lucianos nor Frankenmuth has paid Riverside for the $453,668.75 due and owing under the Bond.

## COUNT I
**(Breach of Contract Against Lucianos)**

41. Riverside repeats and incorporates by reference the averments set forth in paragraphs 1 through 40 as set forth fully herein.

42. Riverside has fully performed its obligations under the Subcontract with Lucianos.

43. Despite numerous demands for payment, Lucianos has failed, refused, and neglected to pay Riverside the $453,668.75 due and owing under the Subcontract.

44. Lucianos has materially breached the Subcontract by, among other things, failing to fully pay Riverside the amounts owed to it under the Subcontract, which has caused Riverside damage.

7

45. A direct and proximate result of Lucianos material breach, Riverside has been damaged.

WHEREFORE, Plaintiff Riverside demands judgment against Lucianos in an amount to be proven at trial within the jurisdictional limits of this Court, together with interest, costs, attorney's fees, and such other further relief as the Court deems just and proper.

## COUNT II
**(Quantum Meruit Against Lucianos)**

46. Riverside repeats and incorporates by reference the averments set forth in paragraphs 1 through 45 as if set forth fully herein.

47. Riverside furnished valuable labor, equipment, material and services to Lucianos, which Lucianos accepted with the knowledge that Riverside was entitled to and expected payment.

48. The fair market value of the billed Work that was at least $1,489,806.25.

49. Riverside also extended significant monetary discounts to Lucianos based on Lucianos' express promises that it would become current on Riverside's invoices.

50. Luciano's, however, despite due demand, has only paid Riverside the amount of $1,036,137.50, which has left an outstanding balance due and owing to Riverside in the amount of $453,668.75 on invoiced amounts, in addition to its entitlement to the significant monetary discounts given under false pretenses.

51. Upon information and belief, Lucianos also submitted invoices to, and been paid by, the USACE for Riverside's work.

52. Lucianos has been unjustly enriched by its failure to pay Riverside or take adequate precautions to ensure that Riverside was paid for providing labor and materials to the Project, in an amount to be proven at trial.

WHEREFORE, Plaintiff Riverside demands judgment against Lucianos in an amount to be proven at trial within the jurisdictional limits of this Court, together with interest, costs, attorney's fees, and such other further relief as the Court deems just and proper.

## COUNT III
### (Promissory Estoppel Against Lucianos)

53. Riverside repeats and incorporates by reference the allegations set forth in paragraphs 1 through 52 as set forth fully herein.

54. Lucianos promised to pay Riverside for work performed on the Project.

55. Lucianos should have reasonably expected its promise to pay Riverside to induce action by Riverside in performing said work.

56. Promises and representations of Lucianos of payment induced Riverside to perform work and supply materials to the Project, and to provide certain discounts on its time and materials.

57. Riverside reasonably relied upon the promises of Lucianos.

58. The actions of Lucianos have caused Riverside to sustain damages in an amount to be proven at trial, plus attorneys' fees, costs, and interest.

WHEREFORE, Riverside demands judgment against Lucianos in an amount to be proven at trial within the jurisdictional limits of this Court, together with interest, costs, attorney's fees, and such other further relief as the Court deems just and proper.

## COUNT IV
### (Violation of RSA 358-A Against Lucianos)

59. Riverside repeats and incorporates by reference the allegations set forth in paragraphs 1 through 58 as set forth fully herein.

60. Lucianos is a "person" within the meaning of RSA 358-A:1, I.

61.   At all relevant times to the facts set forth herein, Lucianos was engaged in "trade" or "commerce" within New Hampshire within the meaning of RSA 358-A:1, II.

62.   Upon information and belief, Lucianos engaged in unfair trades practices, in violation of RSA 358-A, when, as detailed above, Lucianos induced Riverside to: (1) incur additional labor and material costs on the Project, with no intention of reimbursing Riverside the full cost arising therefrom; and (2) provide Lucianos with significant monetary good faith discounts for the rock barge and crane operator, and to not exercise the 37 day late payment clause under the Subcontract and complete the work, based on Lucianos' January 2024 and April-May 2024 promises that it would become and stay current on invoices in exchange for such consideration, with no intention of actually meeting said promise.

63.   Lucianos' violative conduct continued when it proferred knowingly false defenses to payment, to include its claim that the Subcontract limited Riverside to 88 working days, rather than guaranteeing Riverside to a minimum of 88 working days.

64.   Upon information and belief, based on documents received in response to a FOIA request, Lucianos bad faith conduct also included: (1) submitting a seven-figure claim to the USACE seeking relief in connection with weather related delays while, at the same time, attempting to offset payment or backcharge Riverside; and (2) seeking payment from the USACE for Riverside's work, while denying Riverside's payment requests for that same work.

65.   By way of example, Lucianos April 18, 2024 Prompt Payment Certification, signed by Rob Amendolara, Project Manager with Lucianos, represented that Lucianos had previously paid Riverside $2,140,000 for work performed on the Project, and that it was seeking additional payment of $200,000 for Riverside's work.  This representation from Lucianos was

false, as: (a) Lucianos had only paid Riverside $1,036,137; and (b) Riverside had only billed for $1,489,806.25 in work on the Project.

66. Lucianos representations continued in its May 22, 2024 Prompt Payment Certification, again signed by Rob Amendolara, Project Manager with Lucianos. In that Certification, Lucianos represented it had only previously paid Riverside $1,467,737.30 for work performed on the Project (nearly $1M less than represented in April 2024), and that it was seeking additional payment of $89,043 for Riverside's work. Despite reducing the previously represented amount paid, Lucianos still falsely represented it had paid Riverside more than the $1,036,137 actually received, and still misrepresented the total value of Riverside's as-billed work on the Project as $1,556,780.30.

67. Lucianos conduct, as detailed herein, was unethical and unscrupulous, and such misrepresentations and bad faith acts amount to unfair or deceptive trade practices under RSA 358-A:2.

68. Upon information and belief, Lucianos engaged in said practices willfully and intentionally, and in bad faith.

69. As a direct and proximate result of such unfair methods of competition and/or unfair or deceptive acts or practices, Riverside is entitled to recover statutory damages, actual damages, double or treble damages, and the cost of suit and reasonable attorney's fees.

WHEREFORE, Riverside demands judgment against Lucianos in an amount to be proven at trial within the jurisdictional limits of this Court, together with other statutory damages (including double or treble damages), interest, costs, attorney's fees, and such other further relief as the Court deems just and proper.

## COUNT V
### (Miller Act Payment Bond Claim Against Lucianos and Frankenmuth)

70. Riverside repeats and incorporates by reference the allegations set forth in paragraphs 1 through 69 as set forth fully herein.

71. Riverside properly performed its work on the Project.

72. Lucianos has not fully paid Riverside for the work it performed.

73. Under the Miller Act, the Bond is enforceable as against Lucianos and its surety, Frankenmuth, jointly and severally, in the amount of the outstanding balance due to Riverside Accordingly, Lucianos and Frankenmuth owe Riverside the amount of $453,668.75, plus interest and other entitlements.

74. Lucianos and Frankenmuth have failed and refused to pay Riverside the amounts due.

75. Lucianos and Frankenmuth have refused – knowing payment is due to Riverside – to issue payment.

76. Ninety (90) days have elapsed since Riverside last furnished labor, equipment, and services on the Project.

77. This Complaint is filed within one (1) year after Riverside last furnished labor, equipment, and services on the Project.

WHEREFORE, Riverside demands judgment against Lucianos and Frankenmuth, jointly and severally, in the amount of at least $453,668.75, together with interest, costs, attorney's fees, and such other further relief as the Court deems just and proper.

**<u>PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL TRIABLE ISSUES</u>**

                                        Respectfully submitted,

                                        RIVERSIDE MARINE CONSTRUCTION, INC. D/B/A RIVERSIDE & PICKERING MARINE CONTRACTORS

                                        By its attorneys,

December 24, 2024                    */s/ Lindsey K.P. Black*
                                        Seth M. Pasakarnis, Esq. (#18971)
                                        Lindsey K.P. Black, Esq. (#269041)
                                        Hinckley, Allen & Snyder LLP
                                        650 Elm Street, Suite 500
                                        Manchester, NH 03101
                                        (603) 225-4334
                                        spasakarnis@hinckleyallen.com
                                        lblack@hinckleyallen.com

#65436963v2